IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODD KITCHEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:23-cv-00484-MN-SRF |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Todd Kitchen ("Plaintiff") filed this action on May 2, 2023, against Defendant Martin O'Malley,[1] the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's January 6, 2022, final decision denying Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), respectively. 42 U.S.C. §§ 401–434, 1381–1383f.

Before the court are Plaintiff and the Commissioner's cross-motions for summary judgment. (D.I. 11; D.I. 18)[2] Plaintiff asks the court to remand his case for further administrative proceedings. (D.I. 11) The Commissioner requests the court affirm the Administrative Law Judge's (hereinafter "ALJ") decision. (D.I. 18) For the reasons that follow, the court recommends that Plaintiff's motion for summary judgment be **DENIED** and the Commissioner's motion for summary judgment be **GRANTED**.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and is substituted for Kilolo Kijakazi as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.
[2] The briefing submitted for these motions are found at D.I. 12, D.I. 19, and D.I. 20.

1

I.  **BACKGROUND**

   A. **Procedural History**

Plaintiff filed a Title II application for disability benefits on September 24, 2018, and a Title XVI application for supplemental security income on December 14, 2018, for a period of disability starting on February 16, 2018 (hereinafter "alleged onset date" or "AOD"). (*E.g.*, D.I. 6 at 126–27) Plaintiff's initial claims were denied, (*e.g., id.* at 102, 111), as were his reconsiderations. (*See id.* at 126–27) Thereafter, Plaintiff requested a hearing before an ALJ on June 10, 2020, (*id.* at 158–59), and a hearing was held telephonically on October 19, 2021, before the Honorable NaKeisha Blount. (*Id.* at 40–42) Judge Blount issued a decision affirming the denial of benefits on January 6, 2022. (*See id.* at 18–39) Plaintiff timely filed a request for review by the Appeals Council, which was denied on February 27, 2023, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 7–9) This civil action was then timely filed in the District of Delaware on May 2, 2023. (D.I. 2)

   B. **Relevant Medical Evidence**

Plaintiff was thirty-two (32) years old when he filed his applications for disability benefits on September 24, 2018, and supplemental security income on December 14, 2018, for long-term injuries from a car accident in 2005 that placed him in a coma and an assault during a home invasion in 2011. (*E.g.*, D.I. 6 at 126–27, 134, 247; D.I. 6-1 at 516) The ALJ found that Plaintiff suffered from the following severe impairments: "status/post motor vehicle accident, displaced fracture of triquetrum of right wrist, degenerative disc disease/inflammatory spondyloarthropathy, chronic pain syndrome, fibromyalgia, migraine, wasting syndrome, posttraumatic stress disorder, depressive disorder, and posttraumatic brain syndrome[.]" (D.I. 6 at 23–24)

1. **Treatment Records**

Plaintiff met with Mark Wenneker, DO, at Penn Medicine roughly once a month between February of 2017 and October of 2021 for myofascial trigger point injections with dry needling and osteopathic manipulative treatments. (*See* D.I. 6-1 at 275–333, 341–463; D.I. 6-2 at 2–142) Plaintiff would oftentimes rate his pain between 5–7/10. (*E.g.*, D.I. 6-1 at 387, 401) Plaintiff also visited Dr. Kelly Heath at Penn Medicine to receive botulinum toxin injections for his migraines roughly every three months. (*See, e.g., id.* at 278) They would temporarily reduce his headache pain from a 9/10 to a 5/10. (*E.g., id.*)

Plaintiff met with his primary care physician, Dr. Scott J. Schaeffer, at Stoney Batter Family Health roughly once every one-to-two months between March of 2017 and October of 2021 for medication checks. (*See id.* at 76–215, 228–74, 546–52, 566–634) Plaintiff often reported back pain and/or spasms during his appointments. (*E.g., id.* at 589) Dr. Schaeffer noted that Plaintiff used a walker or cane to assist with ambulation at times and often described his appearance as "sickly[.]" (*E.g., id.* at 100–01) Recurrent musculoskeletal exams described Plaintiff's cervical spine as "exquisitely tender" and his lumbosacral spine as "moderate[ly]" tender. (*E.g., id.* at 94)

During an appointment with Dr. Schaeffer on October 1, 2018, Plaintiff noted experiencing an episode of severe spasms that lasted for thirty (30) to forty-five (45) minutes. (*Id.* at 87) Plaintiff further reported that he had not taken Zanaflex the previous night. (*Id.*)

On October 11, 2018, Plaintiff visited Dr. Randeep Kahlon at First State Orthopedics after he fell and fractured his right wrist. (*See id.* at 59–60) Plaintiff underwent an MRI of his wrist the following day. (*Id.* at 62–63) He was placed in a brace, and Dr. Kahlon noted during a

follow-up appointment on November 27, 2018, that Plaintiff's wrist had healed. (*See id.* at 55–56)

During an appointment with Dr. Schaeffer on June 24, 2020, Plaintiff noted that he had experienced a spasm under his left shoulder blade while vacuuming and reported acute thoracic back pain. (*Id.* at 588) Dr. Schaeffer discussed physical therapy with Plaintiff at this appointment. (*See id.*) Thereafter, Plaintiff attended eight sessions at ATI Physical Therapy between June 25, 2020, and July 23, 2020. (*Id.* at 466–80) During his initial evaluation, Plaintiff reported difficulty walking, sitting, or standing more than thirty (30) minutes at a time and difficulty ascending stairs, lifting, and pushing/pulling. (*Id.* at 477) Plaintiff was discharged from ATI for missing appointments. (*Id.* at 467)

On August 21, 2020, Plaintiff enrolled at Premier Physical Therapy. (D.I. 6-2 at 143–56) Plaintiff reported pain with movement, sitting for too long, and when driving for more than ten (10) minutes. (*Id.* at 153) Plaintiff did not complete strength testing at this appointment due to pain. (*Id.* at 154) Plaintiff was discharged from Premier Physical Therapy for failing to respond for follow-up care. (*Id.* at 144)

On February 26, 2021, Plaintiff received a cervical spine x-ray at Delaware Imaging Network, which showed "[m]ild right foraminal narrowing at [Plaintiff's] C3–C4, C4–C5, and C5–C6" vertebrae. (D.I. 6-1 at 545)

Plaintiff visited Tiffany Garcia at 1st State Health and Wellness for eight chiropractic treatments beginning on March 3, 2021, and ending on April 28, 2021. (*See id.* at 481–520) In his initial consultation, Plaintiff complained of headaches, neck pain, mid back pain, and lower back pain. (*Id.* at 515–16) Plaintiff reported the severity of his mid back pain as a 9/10 and his headaches, neck pain, and lower back pain as an 8/10. (*Id.*)

4

Plaintiff returned to First State Orthopedics on April 29, 2021, for moderately severe pain in his left elbow. (*Id.* at 521–24) The attendant physician determined that his pain was "clearly neuropathic in origin" and recommended that Plaintiff discuss the issues with his providers at Penn Medicine. (*Id.* at 522–23)

On May 27, 2021, Plaintiff visited Dr. Tony Cucuzzella at Christiana Spine Center for neck and left arm pain. (*E.g., id.* at 538) Dr. Cucuzzella noted tenderness over Plaintiff's C5–6 and C6–7 facet joints and noted "[p]robable C5–6 and/or C6–7 disc derangement" consistent with severe radiculopathy and T11–12 disc derangement. (*Id.* at 540) He ordered an MRI of Plaintiff's spine. (*Id.* at 541) On June 2, 2021, Plaintiff underwent an MRI at Christiana Spine Center. (*Id.* at 543) The results noted "disc dehydration and a minimal annular bulge" at Plaintiff's C3–C4 and C4–C5 vertebrae. (*Id.*) Thereafter, Dr. Cucuzzella gave Plaintiff a left C6–C7 interlaminar epidural injection on July 13, 2021. (*See id.* at 536)

Plaintiff began visiting Brandywine Rheumatology on August 3, 2021. (*See id.* at 552–55) Eric Russell, DO, noted mild disc desiccation at L1–L2, L2–L3, and L3–L4 and mild anterior wedging of Plaintiff's T12 vertebrae. (*Id.* at 561) Plaintiff was diagnosed with chronic pain syndrome, fibromyalgia, and multiple joint pain. (*Id.* at 562) During a follow-up appointment on August 27, 2021, Plaintiff noted ongoing pain, stiffness, spasms, and joint swelling. (*Id.* at 553)

On September 14, 2021, Plaintiff returned to Christiana Spine Center for a C6 and C7 selective root block. (*Id.* at 526–27) On October 5, 2021, Plaintiff underwent an EMG of his upper and lower right extremities. (D.I. 6-2 at 157–61) Plaintiff's results were "[m]ildly abnormal," showing "[m]ild chronic right S1 radiculitis with no acute features." (*Id.* at 158 (emphasis omitted))

### 2. Opinion Evidence

On August 9, 2019, state agency physician Dr. Darrin Campo examined Plaintiff's physical health records at the initial level of his disability/supplemental security income determination. (*See, e.g.*, D.I. 6 at 117) He found that Plaintiff's description of his symptoms was partially consistent with the medical evidence of record. (*Id.* at 115) He estimated that Plaintiff could occasionally lift or carry twenty (20) pounds and sit or stand for six (6) to eight (8) hours in a given workday. (*Id.*) On September 11, 2019, Dr. Christopher King, PsyD, examined Plaintiff's mental health treatment records at the initial determination level. (*E.g., id.* at 114) Dr. King found that Plaintiff "exhibits mild to moderate symptoms, but no marked deficits that would prevent him from working." (*Id.*)

Plaintiff was consultatively examined by Dr. Brian Simon on August 28, 2019, regarding his mental health limitations. (*E.g., id.* at 121; D.I. 6-1 at 220–27) Dr. Simon noted that Plaintiff appeared depressed and exhibited symptoms consistent with post-traumatic stress disorder (also "PTSD") but found that none of Plaintiff's mental health symptoms were severe enough to be work preclusive. (*See* D.I. 6-1 at 220, 224)

On April 9, 2020, Dr. Joseph Michael affirmed Dr. Campo's findings at the reconsideration level because Plaintiff had the capacity to adjust to other work. (D.I. 6 at 130–31) Furthermore, Dr. Patricia Miripol affirmed Dr. King's mental health findings at the reconsideration level because Plaintiff manages his personal care independently, has no history of intensive mental health treatment, and has not had trouble getting along with others. (*Id.* at 134) Dr. Miripol opined that Plaintiff could perform simple, routine tasks in a low contact environment. (*Id.*) She noted, however, that there was insufficient evidence to make a determination on Plaintiff's Title II claim. (*Id.* at 130)

### C. Hearing Before the ALJ

#### 1. Plaintiff's Testimony

During the hearing before the ALJ on October 19, 2021, Plaintiff testified that he works by watering and trimming plants at a medical marijuana garden facility twice a week in four (4) hour shifts. (D.I. 6 at 40, 46–48) Plaintiff suffers from chronic migraines, pain in his arms, neck, lower back, and legs, an eating disorder, and muscle spasms. (*Id.* at 56–63) Plaintiff ambulates with a cane roughly sixty percent (60%) of the time. (*Id.* at 59) Moreover, he finds it difficult to stand or sit for longer than five (5) to ten (10) minutes at a time without adjustment. (*Id.* at 58) Mentally, Plaintiff suffers from anxiety, panic attacks, reduced concentration, and memory issues. (*Id.* at 60–62) Plaintiff obtains help with daily tasks from his parents and requires reminders to keep up on hygiene and eat. (*E.g., id.* at 61)

#### 2. Vocational Expert's Testimony

The ALJ posed the following hypothetical to the vocational expert (hereinafter "VE"):

> If the hypothetical individual is able to perform light work, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. Occasionally balance, stoop, kneel, crouch, crawl, tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, vibrations, and no exposure to hazards such as moving machinery or unprotected heights. If the individual is able to tolerate exposure to noise no louder than a typical office setting level and lights no brighter than a typical office setting level, is able to finger, handle, and reach frequently, *remember, understand, and carry out simple instructions but cannot work at a production pace such as assembly line work. Is able to tolerate few changes in a routine work setting, frequently interact with supervisors and coworkers but occasionally work in tandem or directly with others, and occasionally interact with the public.* Would such an individual be able to perform [Plaintiff's] past work or current work?

(D.I. 6 at 68 (emphasis added)) The VE testified that the hypothetical claimant would be precluded from working Plaintiff's current job as a plant caretaker and previous job as an insurance claim's specialist. (*Id.*) But the hypothetical claimant could perform jobs in sufficient

7

numbers in the national economy, such as collator operator, mail clerk, and office helper. (*Id.* at 69) Furthermore, if the hypothetical claimant could only perform jobs at the sedentary exertional level, occupations such as sorter, packaging machine tender, and titled addresser would still be available. (*Id.* at 70)

On cross-examination, the VE noted that a hypothetical claimant who is absent from work four (4) or more days a month due to health and medical appointments, who is off-task twenty-five percent (25%) of the workday or more, who takes roughly a five (5) minute break every thirty (30) minutes, and/or who needs frequent reminders on work tasks and instructions would be precluded from working the jobs identified on direct examination or would require accommodations. (*Id.* at 71–73)

**D. The ALJ's Findings**

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time from the AOD through the date of the ALJ's decision. (*See* D.I. 6 at 18–39) The ALJ found, in pertinent part:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.
>
> 2. The claimant has not engaged in substantial gainful activity since February 16, 2018, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: status/post motor vehicle accident, displaced fracture of triquetrum of right wrist, degenerative disc disease/inflammatory spondyloarthropathy, chronic pain syndrome, fibromyalgia, migraine, wasting syndrome, posttraumatic stress disorder, depressive disorder, and posttraumatic brain syndrome (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

8

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dusts, gases, poor ventilation and vibration. He cannot tolerate exposure to hazards such as moving machinery or unprotected heights. He can tolerate noise no louder than a typical office setting and lights no brighter than a typical office setting. He can tolerate frequent fingering, handling and reaching. He can remember, understand and carry out simple instructions, not at a production pace. He can tolerate few changes in a routine work setting, frequent interaction with supervisors and coworkers, occasional tandem work, and occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant . . . was 31 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2018, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(*Id.* at 23–33)

## II. LEGAL STANDARD

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 587

U.S. 97, 102–03 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 587 U.S. at 103). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek*, 587 U.S. at 102 (alterations in original) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "'more than a mere scintilla'" of evidence. *Id.* Additionally, when reviewing the record for substantial evidence, "we are mindful that we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

### III. DISCUSSION

#### A. Disability Determination Process

Title II of the Act affords insurance benefits to people who contributed to the program and who have a disability. *See Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (citing 42 U.S.C. § 423(a)(1)). A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A).

To qualify for disability insurance benefits, a claimant must establish disability prior to the date last insured. 20 C.F.R. § 404.131 (2016); *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014). "Title XVI of the Act provides for the payment of disability benefits to indigent persons

under the Supplemental Security Income . . . program." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 1382(a)).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427–28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at §§ 404.1520(e), 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity (hereinafter "RFC") to perform past relevant work. *See id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. "A claimant's RFC measures the most she can do despite her limitations." *Zirnsak*, 777 F.3d at 611 (quoting 20 C.F.R. § 404.1545(a)(1)) (internal

quotation marks and alterations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *Id.* The ALJ often seeks the VE's assistance in making this finding. *Id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff makes the following four arguments in favor of remand or reversal: (1) the ALJ failed to include the limitations identified in her Psychiatric Review Technique (also "PRT") in her RFC formulation; (2) the RFC did not consider the mental limitations assessed by consultative examiner Dr. Brian Simon; (3) the ALJ did not include the mental limitations assessed by state agency consultants Drs. King and Miripol in her RFC formulation; and (4) the ALJ did not consider Plaintiff's ability to sustain work. (D.I. 12 at 15–21) For the following reasons, the court does not find these arguments persuasive and recommends that the ALJ's decision is supported by substantial evidence.

1. **Relevance of PRT[3] Limitations in RFC**

"When there is evidence of a mental impairment that allegedly prevents a disability claimant from working, the Commissioner is required to evaluate the claimant's mental impairments by use of a PRT." *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 268 (D.N.J. 2022); *see also* 20 C.F.R. § 404.1520a. At step two of the five-stage evaluation process, the ALJ assesses a claimant's PRT. § 404.1520a(c)(3). If a claimant's mental health impairments are not presumed to constitute a disability at step three, any mental impairments assessed in the PRT must be incorporated into the RFC at step four because the RFC must include all "credibly established limitations[.]" *Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020). But the results of a claimant's PRT do not mandate the inclusion of specific language in the RFC, so long as its inclusion is "adequately conveyed[.]" *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209–10 (3d Cir. 2019).

Plaintiff avers that the ALJ failed to include his credibly established moderate mental health limitations in the "Paragraph B" areas of concentrate, persist, or maintain pace and interact with others in the hypothetical posed to the VE and the final RFC formulation. (D.I. 12 at 17–19) The Commissioner argues that the ALJ sufficiently incorporated these limitations. (D.I. 19 at 11–13)

The court recommends that Plaintiff's mental impairments identified in his PRT were sufficiently accounted for in the ALJ's hypothetical to the VE and final RFC formulation. First, the ALJ explained how Plaintiff's mental health limitations were incorporated into her RFC:

---

[3] The Psychiatric Review Technique ("PRT") requires the evaluation of a claimant's mental impairments in four broad areas of function: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see also Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).

> The limitation to simple work not done at a production pace, few changes in a routine work setting, and decreased social interaction accommodate symptoms arising from the mental impairments, including poor short-term memory, hypervigilance, and social anxiety, as well as the moderate limitation in the "B criteria" of understand, remember or apply information, interact with others, and concentrate, persist or maintain pace. Despite a mild limitation in the broad functional area of adapt or manage oneself, the medical evidence shows the claimant has no functional limitations because he is cooperative with examiners, can dress and bathe independently, does simple household chores, prepares simple meals, can shop by himself, and manages his own finances.

(D.I. 6 at 29 (citations omitted)) The hypothetical posed to the VE is substantively identical to the RFC ultimately adopted by the ALJ.[4] (*See id.* at 26, 68)

The ALJ conducted a thorough review of the evidence in concluding that Plaintiff has a moderate limitation in concentration, persistence, or maintaining pace. Specifically, the ALJ noted that while Plaintiff reported decreased concentration, trouble paying attention for more than fifteen (15) minutes, and has difficulty following instructions, he also is "generally . . . alert and fully oriented with adequate concentration and ability to do simple chores and manage his finances." (*Id.* at 25 (citations omitted)) And the ALJ found Drs. King and Miripol's assessment that Plaintiff had only a mild limitation in concentration, persistence, or maintaining pace was unpersuasive because Plaintiff's "PTSD symptomatology and exam findings support finding more restrictive limitations." (*Id.* at 30 (citations omitted)) The ALJ found Dr. Simon's opinion persuasive because Dr. Simon indicated "poor memory and mild depression, but otherwise mostly normal findings" that coincided with the psychiatric record as a whole. (*Id.* at 31) He further noted in his report that Plaintiff "should be able to concentrate and persist for a normal work period but may have some minor difficulties coping with changes in a routine setting

---

[4] A recitation of Plaintiff's RFC can be found at § I.D., *supra*, and the hypothetical RFC posed to the VE can be found at § I.C.2., *supra*.

because of his psychiatric difficulties." (D.I. 6-1 at 224) The ALJ's RFC accounts for these limitations. (*See* D.I. 6 at 29)

Importantly, Plaintiff fails to explain why the RFC in this case is deficient to convey "[Plaintiff's] ability to maintain the necessary attention and concentration to complete tasks[,]" which he claims the RFC does not consider. (*See* D.I. 12 at 18) To the extent that Plaintiff argues that the ALJ failed to take his ability to sustain work into account, (*id.*; D.I. 20 at 1–4), those arguments are addressed in § III.B.4., *infra*.

Plaintiff cites to *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), to support that the RFC's limitation to "one to two step tasks" in this case is insufficient to account for Plaintiff's moderate limitation in concentration, persistence, or maintaining pace. (D.I. 12 at 17–18) But *Hess* clarified that "*Ramirez* did not hold that there is any categorical prohibition against using a simple tasks limitation after an ALJ has found that a claimant often faces difficulties in concentration, persistence, or pace. Rather, a simple tasks limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it." 931 F.3d at 212 (quotation marks omitted). Whether a valid explanation has been given turns on the facts of each case. *Id.* The *Hess* court found that a simple tasks limitation was appropriate given the facts of the case before it because the claimant's daily activities, such as going shopping and doing laundry, progress reports from the claimant's physicians, and a lack of behavioral issues indicated that the claimant was capable of performing simple tasks. *Id.* at 213–14.

Here, based on the facts outlined above, the ALJ in the present case gave a valid explanation for addressing Plaintiff's moderate limitation in concentration, persistence, or maintaining pace through the use of a simple tasks limitation. (*See* D.I. 6 at 29–31)

15

Lastly, although Plaintiff argues that the ALJ did not consider his ability to respond to criticism from supervisors, (*see* D.I. 12 at 17), this limitation was found only by the state agency consultants, Drs. King and Miripol, whose opinions the ALJ found unpersuasive for the reasons outlined above. (*See* D.I. 6 at 30)

### 2. Dr. Simon's Opinion

Plaintiff avers that the ALJ did not incorporate into her RFC his moderate limitations in carrying out instructions under ordinary supervision, sustaining work performance and attendance in a normal work setting, and coping with pressures of ordinary work assessed by state consultative examiner Dr. Brian Simon, nor did she explain a rationale for their omission. (D.I. 12 at 19–20; D.I. 20 at 4–5; *see also* D.I. 6-1 at 226) But Dr. Simon's assessment of moderate limitations, which are contained in the Functional Capacity Evaluation ("FCE") Form attached to Dr. Simon's opinion, (*see* D.I. 6-1 at 226), are consistent with his opinions in the narrative portion of his report, and the ALJ found such opinions persuasive. (*See* D.I. 6 at 31) Namely, Dr. Simon explained that Plaintiff reported the ability to dress and bathe independently, cook simple meals, drive, and go shopping by himself, although he found it "very difficult" to do them. (D.I. 6-1 at 224) Dr. Simon concluded that Plaintiff "did not have any problems maintaining concentration, focus, and attention at the time of his evaluation" and "should be able to concentrate and persist for a normal work period but may have some minor difficulties coping with changes in a routine setting because of his psychiatric difficulties." (*Id.*)

The ALJ stated that she found Dr. Simon's opinion persuasive because it supported a mild to moderate limitation in mental functioning, which coincided with the psychiatric record as a whole. (D.I. 6 at 31) In accordance with Dr. Simon's opinion, the RFC limited Plaintiff to

simple tasks with few workplace changes not at a production pace. (*Id.* at 26; D.I. 19 at 14) Thus, Dr. Simon's opinion was adequately incorporated into the ALJ's RFC.

### 3. Limitations Noted by State Consultants

Plaintiff next argues that the ALJ did not properly consider the opinions of the state agency consultants Drs. King and Miripol, who reviewed his medical records at the initial and reconsideration levels, respectively. (D.I. 12 at 20; D.I. 20 at 5–6) Specifically, the ALJ did not note that the consultants found Plaintiff moderately limited in his ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. (D.I. 6 at 108, 134; *see also* D.I. 12 at 20) But because these observations were not contained in the narrative portion of the consultants' opinions, the ALJ was not required to consider them. *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015); *see also Fox v. Colvin*, 2016 WL 2643263, at *1 n.1 (W.D. Pa. May 10, 2016) (noting that forms "largely consist[ing] of options to circle or check and blanks to be filled in by hand" constitute "weak evidence at best.").

Furthermore, the ALJ did not find Drs. King and Miripol's opinions persuasive because Plaintiff's history of PTSD and traumatic brain injury warranted greater restrictions than those they suggested. (D.I. 6 at 30); *see also Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) ("Although it is clearly within the ALJ's statutory authority to choose whom to credit when witnesses give conflicting testimony, the ALJ cannot reject evidence for no reason or the wrong reason." (quotation marks omitted)). Thus, the ALJ reasonably explained her basis for finding the medical consultants' opinions unpersuasive. Lastly, Plaintiff argues that the ALJ was required to consider the consultants' findings in select areas of mental functioning because he

assessed greater limitations than they did. (*See* D.I. 12 at 20) However, this averment is not supported by any case authorities. (*See id.*)

### 4. Plaintiff's Ability to Sustain Work

Lastly, Plaintiff argues that the ALJ did not consider his ability to sustain work on a continual basis. (D.I. 12 at 20–21; D.I. 20 at 6–7) An ALJ is required to assess a claimant's ability to work consistently over an extended period of time. *Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987).

Here, the ALJ considered Plaintiff's ability to sustain work explicitly when she evaluated Dr. Schaeffer's opinion. (*See* D.I. 6 at 30) The ALJ noted that Dr. Schaeffer believed that Plaintiff could not work on a continual basis and that Plaintiff would miss more than four (4) workdays a month. (*Id.*) The ALJ did not find Dr. Schaffer's opinion persuasive because the significant limitations were incongruous with his assessment that Plaintiff's treatment regime brings his pain down to roughly a 5/10, he is able to ambulate without an assistive device, and has relatively normal strength and range of motion. (*Id.*)

Dr. Simon found in the narrative portion of his report found that Plaintiff could concentrate and persist "for a normal work period[.]" (D.I. 6-1 at 224) Furthermore, Plaintiff does not argue that his medical appointments cannot be scheduled outside of work hours or that he would need to miss days of work to attend his appointments. *E.g.*, *Stull v. Saul*, 2020 WL 5774895, at *1 n.1 (W.D. Pa. Sept. 28, 2020). Therefore, the court recommends that the ALJ sufficiently considered Plaintiff's ability to sustain work.

Accordingly, the court recommends that the ALJ's decision to deny disability benefits is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiff's motion for summary judgment (D.I. 11) be **DENIED** and the Commissioner's (D.I. 18) be **GRANTED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 23, 2024

Sherry R. Fallon
United States Magistrate Judge