IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TODD KITCHEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-484 (MN) (SRF) |
| | ) |
| MARTIN O'MALLEY, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Angela Pinto Ross, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington, DE - Attorney

David C. Weiss, United States Attorney, Delores Montgomery, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Baltimore, MD; Brian C. O'Donnell, Assistant General Counsel, Social Security Administration, Philadelphia, PA – Attorneys for Defendant

September 27, 2024
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court are Plaintiff Todd Kitchen's ("Plaintiff") objections ("Objections") to Magistrate Judge Fallon's July 23, 2024 Report and Recommendation ("the Report"). The Report recommended (1) denying Plaintiff's motion for summary judgment (D.I. 11) and (2) granting the summary judgment cross-motion of Defendant Martin O'Malley, the Commissioner of the Social Security Administration ("Defendant"), (D.I. 18). The Court has reviewed the Report (D.I. 24) Plaintiff's Objections (D.I. 25) and Defendant's response ("Response") (D.I. 26). The Court has also considered *de novo* the objected-to portions of the Report, the relevant portions of the motions, and supporting documentation. (D.I. 11, 12, 18, 19, 20). For the reasons set forth below, Plaintiff's Objections are OVERRULED, the Report is ADOPTED, Plaintiff's motion for summary judgment (D.I. 11) is DENIED, and Defendant's cross-motion for summary judgment (D.I. 18) is GRANTED.

**I.    BACKGROUND**

The Report sets forth a detailed description of the procedural history, relevant medical evidence, and the proceeding before the Administrative Law Judge ("ALJ"). (*See* D.I. 24 at 2-9). The parties have not objected to any of those sections of the Report and the Court finds no error in them. The Court therefore adopts those sections and incorporates them here:

> **A.    Procedural History**
>
> Plaintiff filed a Title II application for disability benefits on September 24, 2018, and a Title XVI application for supplemental security income on December 14, 2018, for a period of disability starting on February 16, 2018 (hereinafter "alleged onset date" or "AOD"). (*E.g.*, D.I. 6 at 126-27) Plaintiffs initial claims were denied, (*e.g.*, *id.* at 102, 111), as were his reconsiderations. (*See id.* at 126-27) Thereafter, Plaintiff requested a hearing before an ALJ on June 10, 2020, (*id.* at 158-59), and a hearing was held telephonically on October 19, 2021, before the Honorable NaKeisha Blount. (*Id.* at 40-42) Judge Blount issued a decision affirming the denial of benefits on January 6, 2022. (*See id.* at 18-39) Plaintiff

timely filed a request for review by the Appeals Council, which was denied on February 27, 2023, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 7-9) This civil action was then timely filed in the District of Delaware on May 2, 2023. (D.I. 2).

**B.      Relevant Medical Evidence**

Plaintiff was thirty-two (32) years old when he filed his applications for disability benefits on September 24, 2018, and supplemental security income on December 14, 2018, for long-term injuries from a car accident in 2005 that placed him in a coma and an assault during a home invasion in 2011. (*E.g.*, D.I. 6 at 126-27, 134, 247; D.I. 6-1 at 516) The ALJ found that Plaintiff suffered from the following severe impairments: "status/post motor vehicle accident, displaced fracture of triquetrum of right wrist, degenerative disc disease/inflammatory spondyloarthropathy, chronic pain syndrome, fibromyalgia, migraine, wasting syndrome, posttraumatic stress disorder, depressive disorder, and posttraumatic brain syndrome[.]" (D.I. 6 at 23-24)

      **1.      Treatment Records**

Plaintiff met with Mark Wenneker, DO, at Penn Medicine roughly once a month between February of 2017 and October of 2021 for myofascial trigger point injections with dry needling and osteopathic manipulative treatments. (*See* D.I. 6-1 at 275-333, 341-463; D.I. 6-2 at 2-142) Plaintiff would oftentimes rate his pain between 5-7/10. (*E.g.*, D.I. 6-1 at 387,401) Plaintiff also visited Dr. Kelly Heath at Penn Medicine to receive botulinum toxin injections for his migraines roughly every three months. (*See, e.g.*, *id.* at 278) They would temporarily reduce his headache pain from a 9/10 to a 5/10. (*E.g.*, *id.*)

Plaintiff met with his primary care physician, Dr. Scott J. Schaeffer, at Stoney Batter Family Health roughly once every one-to-two months between March of 2017 and October of 2021 for medication checks. (*See id.* at 76-215, 228-74, 546-52, 566-634) Plaintiff often reported back pain and/or spasms during his appointments. (*E.g.*, *id.* at 589) Dr. Schaeffer noted that Plaintiff used a walker or cane to assist with ambulation at times and often described his appearance as "sickly[.]" (*E.g.*, *id.* at 100-01) Recurrent musculoskeletal exams described Plaintiff's cervical spine as "exquisitely tender" and his lumbosacral spine as "moderate[ly]" tender. (*E.g.*, *id.* at 94)

During an appointment with Dr. Schaeffer on October 1, 2018, Plaintiff noted experiencing an episode of severe spasms that lasted

for thirty (30) to forty-five (45) minutes. (*Id.* at 87) Plaintiff further reported that he had not taken Zanaflex the previous night. (*Id*.)
On October 11, 2018, Plaintiff visited Dr. Randeep Kahlon at First State Orthopedics after he fell and fractured his right wrist. (*See id.* at 59-60) Plaintiff underwent an MRI of his wrist the following day. (*Id.* at 62-63) He was placed in a brace, and Dr. Kahlon noted during a follow-up appointment on November 27, 2018, that Plaintiff's wrist had healed. (*See id.* at 55-56)

During an appointment with Dr. Schaeffer on June 24, 2020, Plaintiff noted that he had experienced a spasm under his left shoulder blade while vacuuming and reported acute thoracic back pain. (*Id.* at 588**)** Dr. Schaeffer discussed physical therapy with Plaintiff at this appointment. (*See id.*) Thereafter, Plaintiff attended eight sessions at ATI Physical Therapy between June 25, 2020, and July 23, 2020. (*Id.* at 466-80) During his initial evaluation, Plaintiff reported difficulty walking, sitting, or standing more than thirty (30) minutes at a time and difficulty ascending stairs, lifting, and pushing/pulling. (*Id.* at 477) Plaintiff was discharged from ATI for missing appointments. (*Id.* at 467)

On August 21, 2020, Plaintiff enrolled at Premier Physical Therapy. (D.I. 6-2 at 143-56) Plaintiff reported pain with movement, sitting for too long, and when driving for more than ten (10) minutes. (*Id.* at 153) Plaintiff did not complete strength testing at this appointment due to pain. (*Id.* at 154) Plaintiff was discharged from Premier Physical Therapy for failing to respond for follow-up care. (*Id.* at 144)

On February 26, 2021, Plaintiff received a cervical spine x-ray at Delaware Imaging Network, which showed "[m]ild right foraminal narrowing at [Plaintiff's] C3-C4, C4-C5, and C5-C6" vertebrae. (D.I. 6-1 at 545)

Plaintiff visited Tiffany Garcia at 1st State Health and Wellness for eight chiropractic treatments beginning on March 3, 2021, and ending on April 28, 2021. (*See id.* at 481-520) In his initial consultation, Plaintiff complained of headaches, neck pain, mid back pain, and lower back pain. (*Id.* at 515-16) Plaintiff reported the severity of his mid back pain as a 9/10 and his headaches, neck pain, and lower back pain as an 8/10. (*Id*.)

Plaintiff returned to First State Orthopedics on April 29, 2021, for moderately severe pain in his left elbow. (*Id.* at 521-24) The attendant physician determined that his pain was "clearly

3

neuropathic in origin" and recommended that Plaintiff discuss the issues with his providers at Penn Medicine. (*Id.* at 522-23)

On May 27, 2021, Plaintiff visited Dr. Tony Cucuzzella at Christiana Spine Center for neck and left arm pain. (*E.g.*, *id.* at 538) Dr. Cucuzzella noted tenderness over Plaintiff's C5-6 and C6-7 facet joints and noted "[p]robable C5-6 and/or C6-7 disc derangement" consistent with severe radiculopathy and T11-12 disc derangement. (*Id.* at 540) He ordered an MRI of Plaintiff's spine. (*Id.* at 541) On June 2, 2021, Plaintiff underwent an MR1 at Christiana Spine Center. (*Id.* at 543) The results noted "disc dehydration and a minimal annular bulge" at Plaintiff's C3-C4 and C4-C5 vertebrae. (*Id.*) Thereafter, Dr. Cucuzzella gave Plaintiff a left C6-C7 interlaminar epidural injection on July 13, 2021. (*See id.* at 536)

Plaintiff began visiting Brandywine Rheumatology on August 3, 2021. (*See id.* at 552-55) Eric Russell, DO, noted mild disc desiccation at L1-L2, L2-L3, and L3-L4 and mild anterior wedging of Plaintiff's T12 vertebrae. (*Id.* at 561) Plaintiff was diagnosed with chronic pain syndrome, fibromyalgia, and multiple joint pain. (*Id.* at 562) During a follow-up appointment on August 27, 2021, Plaintiff noted ongoing pain, stiffness, spasms, and joint swelling. (*Id.* at 553)

On September 14, 2021, Plaintiff returned to Christiana Spine Center for a C6 and C7 selective root block. (*Id.* at 526-27) On October 5, 2021, Plaintiff underwent an EMG of his upper and lower right extremities. (D.I. 6-2 at 157-61) Plaintiff's results were "[m]ildly abnormal," showing "[m]ild chronic right Sl radiculitis with no acute features." (*Id.* at 158 (emphasis omitted))

2.  **Opinion Evidence**

On August 9, 2019, state agency physician Dr. Darrin Campo examined Plaintiff's physical health records at the initial level of his disability/supplemental security income determination. (*See, e.g.*, D.I. 6 at 117) He found that Plaintiff's description of his symptoms was partially consistent with the medical evidence of record. (*Id.* at 115) He estimated that Plaintiff could occasionally lift or carry twenty (20) pounds and sit or stand for six (6) to eight (8) hours in a given workday. (*Id.*) On September 11, 2019, Dr. Christopher King, PsyD, examined Plaintiff's mental health treatment records at the initial determination level. (*E.g.*, *id.* at 114) Dr. King found that Plaintiff "exhibits mild to moderate symptoms, but no marked deficits that would prevent him from working." (*Id.*)

4

Plaintiff was consultatively examined by Dr. Brian Simon on August 28, 2019, regarding his mental health limitations. (*E.g.*, *id.* at 121; D.I. 6-1 at 220-27) Dr. Simon noted that Plaintiff appeared depressed and exhibited symptoms consistent with post-traumatic stress disorder (also "PTSD") but found that none of Plaintiff's mental health symptoms were severe enough to be work preclusive. (*See* D.I. 6-1 at 220, 224)

On April 9, 2020, Dr. Joseph Michael affirmed Dr. Campo's findings at the reconsideration level because Plaintiff had the capacity to adjust to other work. (D.I. 6 at 130-31) Furthermore, Dr. Patricia Miripol affirmed Dr. King's mental health findings at the reconsideration level because Plaintiff manages his personal care independently, has no history of intensive mental health treatment, and has not had trouble getting along with others. (*Id.* at 134) Dr. Miripol opined that Plaintiff could perform simple, routine tasks in a low contact environment. (*Id.*) She noted, however, that there was insufficient evidence to make a determination on Plaintiff's Title II claim. (*Id.* at 130)

### C.     Hearing Before the ALJ

#### 1.     Plaintiff's Testimony

During the hearing before the ALJ on October 19, 2021, Plaintiff testified that he works by watering and trimming plants at a medical marijuana garden facility twice a week in four (4) hour shifts. (D.I. 6 at 40, 46-48) Plaintiff suffers from chronic migraines, pain in his arms, neck, lower back, and legs, an eating disorder, and muscle spasms. (*Id.* at 56-63) Plaintiff ambulates with a cane roughly sixty percent (60%) of the time. (*Id.* at 59) Moreover, he finds it difficult to stand or sit for longer than five (5) to ten (10) minutes at a time without adjustment. (*Id.* at 58) Mentally, Plaintiff suffers from anxiety, panic attacks, reduced concentration, and memory issues. (*Id.* at 60-62) Plaintiff obtains help with daily tasks from his parents and requires reminders to keep up on hygiene and eat. (*E.g.*, *id.* at 61)

#### 2.     Vocational Expert's Testimony

The ALJ posed the following hypothetical to the vocational expert (hereinafter "VE"):

If the hypothetical individual is able to perform light work, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds. Occasionally balance, stoop, kneel, crouch, crawl, tolerate

occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dust, gases, poor ventilation, vibrations, and no exposure to hazards such as moving machinery or unprotected heights. If the individual is able to tolerate exposure to noise no louder than a typical office setting level and lights no brighter than a typical office setting level, is able to finger, handle, and reach frequently, *remember, understand, and carry out simple instructions but cannot work at a production pace such as assembly line work. Is able to tolerate few changes in a routine work setting, frequently interact with supervisors and coworkers but occasionally work in tandem or directly with others, and occasionally interact with the public.* Would such an individual be able to perform [Plaintiff's] past work or current work?

(D.I. 6 at 68 (emphasis added)) The VE testified that the hypothetical claimant would be precluded from working Plaintiff's current job as a plant caretaker and previous job as an insurance claim's specialist. (*Id.*) But the hypothetical claimant could perform jobs in sufficient numbers in the national economy, such as collator operator, mail clerk, and office helper. (*Id.* at 69) Furthermore, if the hypothetical claimant could only perform jobs at the sedentary exertional level, occupations such as sorter, packaging machine tender, and titled addresser would still be available. (*Id.* at 70)

On cross-examination, the VE noted that a hypothetical claimant who is absent from work four (4) or more days a month due to health and medical appointments, who is off-task twenty-five percent (25%) of the workday or more, who takes roughly a five (5) minute break every thirty (30) minutes, and/or who needs frequent reminders on work tasks and instructions would be precluded from working the jobs identified on direct examination or would require accommodations. (*Id.* at 71-73)

### 3. The ALJ's Findings

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time from the AOD through the date of the ALJ's decision. (*See* D.I. 6 at 18-39) The ALJ found, in pertinent part:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2. The claimant has not engaged in substantial gainful activity since February 16, 2018, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

6

3. The claimant has the following severe impairments: status/post motor vehicle accident, displaced fracture of triquetrum of right wrist, degenerative disc disease/inflammatory spondyloarthropathy, chronic pain syndrome, fibromyalgia, migraine, wasting syndrome, posttraumatic stress disorder, depressive disorder, and posttraumatic brain syndrome (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He can tolerate occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dusts, gases, poor ventilation and vibration. He cannot tolerate exposure to hazards such as moving machinery or unprotected heights. He can tolerate noise no louder than a typical office setting and lights no brighter than a typical office setting. He can tolerate frequent fingering, handling and reaching. He can remember, understand and carry out simple instructions, not at a production pace. He can tolerate few changes in a routine work setting, frequent interaction with supervisors and coworkers, occasional tandem work, and occasional interaction with the public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant . . . was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* S.S.R. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2018, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(*Id*. at 23-33).

On July 23, 2024, Judge Fallon issued the Report recommending Plaintiff's motion for summary judgment be denied and that Defendant's cross-motion for summary judgment be granted. (D.I. 24). Plaintiff timely filed its Objections to the Report and Defendant filed its Response. (D.I. 25, 26).

## II. LEGAL STANDARDS

The power vested in a federal magistrate judge varies depending on whether the issue to be decided is dispositive or non-dispositive. "Unlike a nondispositive motion (such as a discovery motion), a motion is dispositive if a decision on the motion would effectively determine a claim or defense of a party." *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 98-99 (3d Cir. 2017) (citations omitted). For reports and recommendations issued for dispositive motions, "a party may serve and file specific written objections to the proposed findings and recommendations" within fourteen days of the recommended disposition issuing, and "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(2)-(3); *see also* 28 U.S.C. §§ 636(b)(1)(B)-(C); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). "When no timely objection is filed," including as to select portions of the report, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Speakman v. Williams*, 440 F. Supp. 3d 376, 381 (D. Del. 2020) (quoting Fed. R. Civ. P. 72(b) advisory committee notes to 1983

amendment), *aff'd*, 841 F. App'x 382 (3d Cir. 2021). District courts are still obligated to apply "reasoned consideration" in such situations, "because a district court must take some action for a report and recommendation to become a final order and because the authority and the responsibility to make an informed, final determination remains with the judge." *City of Long Branch*, 866 F.3d at 100 (cleaned up) (citing *Mathews v. Weber*, 423 U.S. 261, 271 (1976); *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)).

The Court reviews fact determinations made by an administrative law judge for substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is an evidentiary threshold that is "not high" and only requires "more than a mere scintilla" of evidence. *Id.* (citation omitted). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

### III.  **DISCUSSION**

Plaintiff objects to three of the Magistrate Judge's findings in the Report: (1) that the ALJ properly accounted for Mr. Kitchen's mental impairments identified in her psychiatric review technique form ("PRT") in her hypothetical and final residual functional capacity ("RFC") formulation; (2) that the ALJ adequately incorporated the opinion of Dr. Brian Simon in the RFC finding; and (3) that the ALJ sufficiently considered Plaintiff's ability to sustain work. (D.I. 25 at 1). Plaintiff raised each of these challenges before the Magistrate Judge. *See* Report at 12. The Court addresses each argument below.[1]

---

[1]  The Court notes that Plaintiff failed to file a Certification of Compliance with its Objections, pursuant to the Court's March 7, 2022 Standing Order for Objections. (*See* D.I. 27). Instead, Plaintiff filed his Certification separately, on August 26, 2024. (D.I. 28).

9

### A. The's ALJ's Accounting for Plaintiff's Moderate Limitations in Concentration, Persistence, or Pace in the RFC.

Plaintiff asserts that the ALJ did not properly account for moderate limitations in his ability to maintain concentration, persistence and pace or provide a well-supported and valid explanation for excluding other limitations. (D.I. 25 at 2). First, Plaintiff says the ALJ failed to consider Plaintiff's ability to "stay on task." (*Id.*). As the Report addresses, the ALJ specifically noted that Plaintiff reported "decreased concentration, inability to pay attention for more than 15 minutes, and difficulty following written and spoken instructions." (D.I. 6 at 19; Report at 14). Notwithstanding those contentions, the ALJ determined that a moderate limitation was appropriate because "exams generally indicate [Plaintiff] is alert and fully oriented with adequate concentration and ability." (D.I. 6 at 19). The Report further chronicles the ALJ's review of assessments from Drs. King, Miripol, and Simon, the latter of which reported "mostly normal findings" that were corroborated by "the psychiatric record as a whole." (Report at 14; D.I. 6 at 25). In light of those considerations, the Court agrees with the Report that "[t]he ALJ conducted a thorough review of the evidence" and her determination was based on substantial evidence on this point. (Report at 14).

Second, Plaintiff says that the ALJ erred by failing to consider that Plaintiff told Dr. Simon he could only perform certain daily activities with difficulty, such as household chores and managing his finances. (D.I. 25 at 3). The Report found that "Dr. Simon's opinion was adequately incorporated into the ALJ's RFC," because the ALJ considered Dr. Simon's narrative report and Functional Capacity Evaluation. (Report at 16-17). Based on those opinions in conjunction with the rest of the record, the ALJ found Dr. Simon's opinions "persuasive" for a "moderate limitation" determination. (*Id.*). Moreover, the ALJ considered the medical opinions of multiple other doctors on this point, including those of Drs. King and Miripol, who each found that Plaintiff "manages

10

his personal care independently" and "performs basic daily activities independently." (D.I. 6 at 24-25, 99, 108, 126-28; Report at 6). Therefore, the Court agrees with the Report that the ALJ's decision with was supported by substantial evidence.

      **B.**      <u>**The Adequacy of the Incorporation of Dr. Simon's Opinion into the ALJ's RFC**</u>

Next, Plaintiff contends that the ALJ failed to consider or properly reject certain opinions from Dr. Simon pertaining to "pace-related limitations." (D.I. 25 at 5). The ALJ expressly addressed the pace limitation in her hypothetical to the vocational expert when she said that Plaintiff "cannot work at a production pace such as assembly line work," (Report at 7; D.I. 6 at 62), and again in her finding that Plaintiff "can remember, understand and carry out simple instructions, *not at a production pace*" (Report at 9 (emphasis added); D.I. 6 at 20). The ALJ also explained that "exams" showed that Plaintiff had a sufficient alertness and orientation to concentrate and perform, leading her to find "no greater than moderate limitation in the criteria of concentrate, persist or maintain pace." (D.I. 6 at 19).

As the Report states, "Dr. Simon explained that Plaintiff reported the ability to dress and bathe independently, cook simple meals, drive, and go shopping by himself, although he found it 'very difficult' to do them." (Report at 16; D.I. 6-1 at 224). As already addressed in Section III.A, *supra*, the ALJ considered that opinion in finding that Dr. Simon's opinion was persuasive and consistent with "the psychiatric record as a whole." (Report at 16-17). Based on that substantial evidence, the ALJ found that Plaintiff had only a moderate limitation with respect to maintaining pace at work. (*Id.*).

      **C.**      <u>**The ALJ's Consideration of Plaintiff's Ability to Sustain Work When She Evaluated Dr. Schaeffer's Opinion**</u>

Finally, Plaintiff maintains that the ALJ failed to adequately consider Plaintiff's ability to sustain work, because she improperly assessed the opinions offered by Drs. Schaeffer and Simon.

11

(D.I. 25 at 6). First, as already discussed, Plaintiff objects to the ALJ's findings on the basis that they failed to consider both doctors' opinions with respect to "pace-related limitations." (*Id.*). On that point, the Court reiterates its rulings already provided in Sections III.A & B, *supra*.

Second, Plaintiff asserts that the ALJ failed to properly evaluate his ability to sustain work "on a regular and ongoing basis" – in other words, his ability to work a traditional full-time, forty-hours-a-week job. (D.I. 25 at 6-7). Plaintiff's sole contention here is that his doctor visits would "likely impact" his ability to attend work. (*Id.* at 7); *see Kangas v. Bowen*, 823 F .2d 775, 777-78 (3d Cir. 1987). The Court agrees with the Report that the ALJ adequately considered Plaintiff's ability to sustain work.

The ALJ noted Dr. Schaeffer's opinion that Plaintiff could not work on a continual basis and that Plaintiff "would be absent more than four days per month." (D.I. 6 at 24). As the Report states, the ALJ found that opinion "not persuasive" because it was "inconsistent" with other of Dr. Schaeffer's explanations (*id.*) as well as Dr. Simon's contradicting opinion that "Plaintiff could concentrate and persist for a normal work period" (Report at 16) (internal quotation marks omitted). Therefore, the Report did not fail to adequately consider the opinions of Drs. Schaeffer and Simon.

Additionally, Plaintiff objects to the Report's observation that "Plaintiff does not argue that his medical appointments cannot be scheduled outside of work hours or that he would need to miss days of work to attend his appointments." (Report at 18).[2] Plaintiff argues that the Report errs on that point, because the ALJ did not specifically make such a finding at the administrative level. (D.I. 25 at 7). But Plaintiff has it backwards; it is not the ALJ's burden to show that Plaintiff could

---

[2] Nor does Plaintiff assert, for that matter, that missing four days of work a month for medical reasons would disqualify him from eligibility for work with the average employer.

12

schedule his doctor appointments during non-working hours, it its Plaintiff's burden to develop a record that he could not.[3] Plaintiff did not do so before the ALJ, or even make the argument in his briefing to the Magistrate Judge.[4] (*Cf.* D.I. 12 at 20-21). Therefore, the ALJ properly found that Plaintiff did not prove that he would be unable to sustain work as a result of his medical appointments.

Accordingly, the Court finds that the Report properly recommended adoption of the ALJ's findings with respect to Plaintiff's ability to sustain work.

## IV. CONCLUSION

For the foregoing reasons, the Court OVERRULES Plaintiff's Objections (D.I. 25), ADOPTS the Report (D.I. 24), DENIES Plaintiff's motion for summary judgment (D.I. 11), and GRANTS Defendant's cross-motion for summary judgment (D.I. 18).

An appropriate order will follow.

---

[3] For the same reason, Plaintiff's arguments that his appointments are out of state are unavailing. (*See* D.I. 25 at 7). Even that argument is not fully developed on an evidentiary basis – Plaintiff only says that his appointments are "likely" to cause him to miss a full day of work. (*Id.*).

[4] Moreover, he cannot rely on those arguments for the first time in his Objections, because "[i]t is well-settled that issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Vonville v. Kerestes*, No. 14-1582 (ARC), 2019 WL 1040747, at *12 (M.D. Pa. Mar. 5, 2019) (citations and alterations omitted); *Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) ("[B]ecause Appellant raised the argument . . . [about] disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived."); *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).